No. 22-2263

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

SHEILA ANN TRANTHAM,
*Debtor-Appellant,*

v.

STEVEN G. TATE,
*Trustee-Appellee.*

_____

On Appeal from the United States District Court
for the Western District of North Carolina

_____

**TRUSTEE-APPELLEE STEVEN G. TATE'S
RESPONSE BRIEF**

_____

Bonnie Keith Green
THE GREEN FIRM, PLLC
P.O. Box 11011
Charlotte, NC 28220
(704) 327-9010
bonnie@bonniegreenlaw.com
*Counsel for Steven G. Tate, Trustee-Appellee*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-2263__          Caption: _Sheila Ann Trantham v. Steven G. Tate_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Steven G. Tate_
(name of party/amicus)

_____

 who is _____Trustee-Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.  Does party/amicus have any parent corporations?                      ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                      ☐YES ☑NO
    If yes, identify all such owners:

i

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)          ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?                    ☑YES ☐NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

       1. N/A - There is no creditors' committee in this Chapter 13 proceeding.
       2. N/A - The only debtor is Sheila Ann Trantham, who is listed in the caption.
       3. N/A - The debtor is not a corporation.

7.     Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: Bonnie Keith Green                    Date:          4/6/2023

Counsel for: Steven G. Tate, Trustee-Appellee

Print to PDF for Filing          Reset Form

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ....................................................i

TABLE OF AUTHORITIES ...................................................vi

INTRODUCTION.............................................................1

JURISDICTIONAL STATEMENT ...........................................3

STATEMENT OF THE ISSUES...........................................3

STATEMENT OF THE CASE ...............................................4

SUMMARY OF THE ARGUMENT .........................................8

ARGUMENT ...................................................................9

I.     STANDARD OF REVIEW ...........................................9

II.    THE DISTRICT COURT PROPERLY HELD THAT
TRANTHAM LACKED STANDING TO APPEAL THE
BANKRUPTCY COURT'S ORDER BECAUSE SHE
FAILED TO SHOW AN ADVERSE PECUNIARY EFFECT
IN HER CASE ........................................................10

III.   SECTION 7.1 OF LOCAL FORM 4—STATING THAT
THE DEBTOR'S PROPERTY VESTS IN THE ESTATE AT
CONFIRMATION AND IN THE DEBTOR UPON ENTRY
OF THE FINAL DECREE—IS CONSISTENT WITH THE
BANKRUPTCY CODE AND IS A PROPER EXERCISE OF
THE DISTRICT COURT'S RULEMAKING AUTHORITY ..........14

     A.     Section 7.1 of Local Form 4 is consistent with the
Bankruptcy Code because the plain language of the
statute permits vesting in the debtor at confirmation
or a later time....................................................15

iii

        1. Vesting generally ............................................................ 15

        2. The plain language of Section 1322(b)(9) and Section 1327(b) ............................................................ 17

   B.   The Western District's adoption of Local Form 4 was a proper exercise of its rulemaking authority, and Local Form 4 is consistent with Official Form 113 ............. 21

     1.   The Federal Rules of Bankruptcy Procedure delegate rulemaking authority to district courts to make and amend rules of practice and procedure for bankruptcy cases ........................................................ 21

     2.   The Western District's bankruptcy judges complied with the rulemaking requirements in enacting the Local Rules, including Local Form 4 ........... 24

     3.   The Western District's Local Form 4 is consistent with the Bankruptcy Code and Official Form 113 ........... 25

     4.   Debtors must include nonstandard provisions in Section 8.1.7 of the Local Form—and nowhere else ........ 30

     5.   Section 7.1 of Local Form 4 does not abridge, enlarge, or modify a substantive right ............................. 34

     6.   Requiring debtors to use official or local forms promotes the efficient administration of bankruptcy cases ............................................................ 42

IV.   THE STATUTE DOES NOT GIVE THE DEBTOR THE SOLE DISCRETION TO DETERMINE THE TIME OF VESTING ...................................................................... 44

V.    THE SEVENTH CIRCUIT'S DECISION IN *IN RE CHERRY* IS CONTRARY TO THE PLAIN LANGUAGE OF THE STATUTE, AND THIS COURT SHOULD NOT ADOPT THE HOLDING OF *IN RE CHERRY*............................. 48

VI.   THE *LVNV* CASE IS NOT CONTROLLING ............................... 52

CONCLUSION ........................................................................ 53

REQUEST FOR ORAL ARGUMENT ..................................................... 54

CERTIFICATE OF COMPLIANCE........................................................ 55

CERTIFICATE OF SERVICE............................................................. 56

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Associated Dry Goods Corp. v. EEOC*,
    720 F.2d 804 (4th Cir. 1983) ......................................................... 35

*Bender v. Williamsport Area Sch. Dist.*,
    475 U.S. 534 (1986) ....................................................................... 11

*Bishop v. Bartlett*,
    575 F.3d 419 (4th Cir. 2009) ........................................................... 9

*Bonner v. Adams*,
    734 F.2d 1094 (5th Cir. 1984) ................................................. 36, 37

*Bullard v. Blue Hills Bank*,
    575 U.S. 496 (2015) ................................................. 34, 42, 46, 47

*Butala v. Logan (In re Butala)*,
    No. 5:18-CV-376-FL, 2019 U.S. Dist. LEXIS 27250
    (E.D.N.C. Feb. 21, 2019) ......................................................... 11, 12

*Diaz v. Viegelahn (In re Diaz)*,
    972 F.3d 713 (5th Cir. 2020) ....................................... 38, 39, 40, 41

*Hamilton v. Lanning*,
    560 U.S. 505 (2010) ............................................................... 39, 40

*Hanna v. Plumer*,
    380 U.S. 460 (1965) ....................................................................... 36

*Hanson Permanente Cement v.*
    *Kaiser Gypsum Co. (In re Kaiser Gypsum Co.)*,
    60 F. 4th 73 (4th Cir. 2023).......................................................... 11

*In re Achinivu*,
    612 B.R. 860 (Bankr. D.N.J. 2020) ............................................... 43

*In re Bunch*,
    119 B.R. 77 (Bankr. D.S.C. 1990) ................................................. 16

*In re Cherry*,
    963 F.3d 717 (7th Cir. 2020) ................................................. *passim*

*In re Clark*,
927 F.2d 793 (4th Cir. 1991) ........................................................ 10

*In re Decker*,
595 F.2d 185 (3d Cir. 1979) .......................................................... 38

*In re Johnson*,
335 B.R. 805 (Bankr. W.D. Tenn. 2006) ....................................... 27

*In re Jones*,
339 B.R. 360 (Bankr. E.D.N.C. 2006) .................................... 17, 27

*In re Mank*,
19-04199-5-SWH, 2020 Bankr. LEXIS 657
(Bankr. E.D.N.C. Mar. 10, 2020) ..................................... 32, 33, 34

*In re McIntosh*,
No. 12-46715-399, 2012 WL 6005761
(Bankr. E.D. Mo. Nov. 30, 2012) ............................................ 34, 42

*In re Olszewski*,
580 B.R. 189 (Bankr. D.S.C. 2017) ......................................... 43, 44

*In re Rosa*,
495 B.R. 522 (Bankr. D. Haw. 2013) ............................................ 47

*In re Solitro*,
382 B.R. 150 (Bankr. D. Mass. 2008) ............................................ 24

*In re Steenes*,
918 F.3d 554 (7th Cir. 2019) ........................................................ 49

*In re Steenes*,
942 F.3d 834 (7th Cir. 2019) ........................................................ 49

*In re Walat*,
87 B.R. 408 (Bankr. E.D. Va. 1988) ................................... 35, 36, 37

*Janvey v. Romero*,
883 F.3d 406 (4th Cir. 2018) ................................................... 43, 47

*Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*,
258 F.3d 315 (4th Cir. 2001) .......................................................... 9

*Law v. Siegel*,
   571 U.S. 415 (2014) ........................................................ 44, 45, 46

*LVNV Funding, LLC v. Harling*,
   852 F.3d 367 (4th Cir. 2017) ........................................................ 52

*Mar-Bow Value Partners, LLC v.*
*McKinsey Recovery & Transformation Servs.*,
   469 F. Supp. 3d 505 (E.D. Va. 2020)...................................... 10, 11

*Moncur v. Agricredit Acceptance Co. (In re Moncur)*,
   328 B.R. 183 (B.A.P. 9th Cir. 2005) ...................................... 38, 41

*New Cingular Wireless PCS v. Finley*,
   674 F.3d 225 (4th Cir. 2012) ........................................................ 20

*Ranta v. Gorman*,
   721 F.3d 241 (4th Cir. 2013) ........................................................ 10

*Sexton v. Dep't of Treasury, IRS (In re Sexton)*,
   508 B.R. 646 (Bankr. W.D. Va. 2014) ........................................ 16

*Sibbach v. Wilson & Co.*,
   312 U.S. 1 (1941) ........................................................................ 35

*Siegel v. Fitzgerald*,
   142 S. Ct. 1770 (2022) ................................................................ 29

*Tankersley v. Almand*,
   837 F.3d 390 (4th Cir. 2016) ........................................................ 18

*Tidewater Fin. Co. v. Moffett (In re Moffett)*,
   356 F.3d 518 (4th Cir. 2004) ........................................................ 16

*United States v. Hatcher*,
   560 F.3d 222 (4th Cir. 2009) ........................................................ 20

*United States v. Passaro*,
   577 F.3d 207 (4th Cir. 2009) ........................................................ 18

*Wachovia Bank v. Schmidt*,
   546 U.S. 303 (2006) .................................................................... 20

*White v. Univision of Va. Inc. (In re Urban Broad. Corp.)*,
   401 F.3d 236 (4th Cir. 2005) ........................................................ 10

**Statutes:**

11 U.S.C. § 101 ......................................................................... 53

11 U.S.C. § 362(a) ................................................................... 16

11 U.S.C. § 362(a)(3) .......................................................... 16, 17

11 U.S.C. § 362(a)(4) ............................................................. 16

11 U.S.C. § 362(a)(5) ............................................................. 16

11 U.S.C. § 363(b) ................................................................... 32

11 U.S.C. § 522 ........................................................... 12, 45, 46

11 U.S.C. § 522(b) ................................................................. 45

11 U.S.C. § 522(b)(1) ............................................................ 45

11 U.S.C. § 541 ................................................................... 5, 15

11 U.S.C. § 541(a) ................................................................. 15

11 U.S.C. § 541(a)(1) ............................................................. 15

11 U.S.C. § 1301 ..................................................................... 53

11 U.S.C. § 1306 ................................................................. 5, 15

11 U.S.C. § 1306(b) ............................................................... 16

11 U.S.C. § 1322 ............................................................... 17, 52

11 U.S.C. § 1322(a) ............................................................... 17

11 U.S.C. § 1322(b) ........................................................... 17, 45

11 U.S.C. § 1322(b)(9) ...................................................... *passim*

11 U.S.C. § 1325 ..................................................................... 52

11 U.S.C. § 1325(a) ............................................................... 53

11 U.S.C. § 1325(a)(1) ............................................................ 53

11 U.S.C. § 1325(a)(5)(c) ........................................................ 43

11 U.S.C. § 1325(b) ............................................................... 40

11 U.S.C. § 1325(b)(2) ....................................................... 39, 40

11 U.S.C. § 1327(b) ................................................................. *passim*

28 U.S.C. § 158(a)(1) ........................................................................ 3

28 U.S.C. § 158(d)(1) ........................................................................ 3

28 U.S.C. § 2075 .................................................................... *passim*

**Rules:**

Fed. R. Civ. P. 83 ........................................................................... 23

Fed. R. Bankr. P. 1001 .................................................................. 22

Fed. R. Bankr. P. 3015 ................................................... 27, 35, 37

Fed. R. Bankr. P. 3015(c) ...................................................... *passim*

Fed. R. Bankr. P. 3015.1 ....................................................... *passim*

Fed. R. Bankr. P. 3015.1(a) ......................................................... 24

Fed. R. Bankr. P. 9009(a) ............................................................. 23

Fed. R. Bankr. P. 9019 ................................................................. 32

Fed. R. Bankr. P. 9029 ............................................... 22, 23, 27, 37

Bankr. Local Rule 4002-1(e)(1) .................................................. 13

**Constitutional Provisions:**

U.S. Const., Art. 1, § 8, cl. 4 ...................................................... 28

**Other Authorities:**

8 Collier on Bankruptcy ¶ 1322.13 ........................................... 25

8 Collier on Bankruptcy ¶ 1327.03 ........................................... 50

9 Collier on Bankruptcy ¶ 3015.1.01 ................................. 23, 24

Ely, *The Irrepressible Myth of Erie*,
    87 Harv. L. Rev. 693 (1974) ............................................... 38

Fed. R. Bankr. P. 3015(c)
    advisory committee's notes to 2017 amendments ........................... 23

Official Form 113, Part 8
    drafters' committee note December 2017 ........................................31

Official Form 113 .............................................................. *passim*

Local Form 4 .................................................................. *passim*

## INTRODUCTION

The bankruptcy court properly sustained the Trustee's objection to Trantham's proposed chapter 13 plan, which attempted to rewrite the local form and did not follow the mandatory requirements for the placement of nonstandard provisions. Therefore, this Court should affirm the district court's ruling.

The issue in this case hinges on what Congress meant when it addressed vesting in 11 U.S.C. § 1322(b)(9) and 11 U.S.C. § 1327(b). Those statutory provisions show that vesting in chapter 13 cases is permissive; it can occur in the debtor or another entity at confirmation or a later time. Even if 11 U.S.C. § 1327(b) suggests a "default" method of vesting in the debtor at confirmation, Congress also provided a broad exception—"except as otherwise provided in the plan"—opening the door to other methods and times of vesting.

Under the Federal Rules of Bankruptcy Procedure, debtors filing for chapter 13 bankruptcy protection must use the official form or the district court's form if the district has adopted its own form. But the district court's form is the starting point, not the end point. Debtors can propose a different method of vesting if they comply with the Federal

1

Rules of Bankruptcy Procedure governing the placement of nonstandard provisions—most importantly, the requirement that debtors place nonstandard provisions in a special section of the form.

Debtors' rights are not trampled on by being required to follow the scheme established by the Federal Rules of Bankruptcy Procedure for the placement of nonstandard provisions in chapter 13 plan forms. This is primarily because bankruptcy courts retain discretion to accept a debtor's proposed method of vesting when the debtor: (1) complies with the rules governing the placement of nonstandard provisions; and (2) demonstrates an adverse pecuniary effect in the debtor's case if the nonstandard provision is not allowed.

Here, Trantham did neither. Trantham failed to comply with the Federal Rules of Bankruptcy Procedure when she attempted to rewrite the district's local form. In addition, she showed no adverse pecuniary effect from the district's standard method of vesting in her case. Thus, the bankruptcy court properly sustained the Trustee's objection to her proposed chapter 13 plan. The district court properly affirmed, holding both that Trantham was not permitted to rewrite the district court's plan form and that she lacked standing to appeal to district court

2

because she was not a "person aggrieved" by the bankruptcy court's order.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 158(d)(1) to review the final decision of the district court. The district court had jurisdiction under 28 U.S.C. § 158(a)(1) to review the bankruptcy court's final order confirming the debtor's amended Chapter 13 plan.

## STATEMENT OF THE ISSUES

1. Did the district court properly hold that Trantham lacked standing to appeal the bankruptcy court's order sustaining the Trustee's objection to her Chapter 13 plan?

2. May district courts or bankruptcy judges—consistent with the Bankruptcy Code and Federal Rules of Bankruptcy Procedure— adopt a Chapter 13 local plan form with a standard provision that the debtor's property remains vested in the estate at confirmation and vests in the debtor upon entry of the final decree?

3. What is the proper way for a debtor to include a nonstandard provision in a Chapter 13 local plan form?

4. Does Section 7.1 of the Western District of North Carolina's local Chapter 13 plan form—Local Form 4—abridge, enlarge, or modify a substantive right?

## STATEMENT OF THE CASE

Sheila Ann Trantham filed a voluntary petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Western District of North Carolina on September 22, 2021. JA 10-57. At the time, Trantham listed her gross monthly income as $2,926.02. JA 33. Trantham valued the total of her personal property at $12,815.00. JA 23. She claimed the entire amount of her personal property as exempt under state and federal non-bankruptcy exemptions. JA 24-25. Trantham identified no creditors with secured claims, and she identified no creditors with priority unsecured claims. JA 17, 26-27. The total of the nonpriority unsecured claims was $30,249.00. JA 17, 30. Trantham identified no executory contracts or unexpired leases. JA 31.

On September 22, 2021, Trantham also filed her "Chapter 13 Plan – Local Plan for the Western District of North Carolina," using the required Western District of North Carolina's Local Form 4. JA 58-63. In Section 1.5, Trantham checked the box indicating that her Chapter 13 plan included nonstandard provisions. JA 59. In Section 7.1,

Trantham struck through the final sentence of the Local Form as to

vesting:

> 7.1  Property of the estate includes all of the property
> specified in 11 U.S.C. § 541 and all property of the kind
> specified in 11 U.S.C. § 1306 acquired by the Debtor
> after commencement of the case but before the case is
> closed, dismissed, or converted to one under another
> chapter of the Code.  ~~All property of the Debtor remains
> vested in the estate and will vest in the Debtor upon
> entry of the final decree.~~

JA 61.  In Section 8.1.17, Trantham included a nonstandard provision

as to vesting, stating: "pursuant to 11 U.S.C. § 1327(b), confirmation of

the plan vests all of the property of the estate in the debtor."  JA 63.

The United States Bankruptcy Trustee for the Statesville division

of the Western District of North Carolina, Steven G. Tate, objected to

confirmation of Trantham's proposed plan and moved to dismiss the

case on November 18, 2021.  JA 64.  The Trustee's objection stated in

part that "changes to the plan form [contradict] the plan form language

as approved by the Western District of North Carolina bankruptcy

court."  JA 64.  The Trustee's objection further stated: "Debtor's plan

strikes through language in section 7.1 that property remains vested in

the estate until the final decree is entered."  JA 64.

5

Trantham proposed an amended Chapter 13 plan on December 2, 2021, with unrelated amendments as to sections 1.1-1.4. JA 67-69. On January 28, 2022, the bankruptcy court entered an order sustaining the Trustee's November 18, 2021, objection to confirmation. JA 70. The bankruptcy court allowed Trantham thirty days to amend her plan. JA 72.

Trantham's second amended Chapter 13 plan removed the strike through of the last sentence of Section 7.1 and retained Section 7.1 as it appears in Local Form 4. JA 73. In Section 8.1.17 of her second amended Chapter 13 plan, Trantham reserved her right to appeal confirmation of the amended plan. JA 74. Trantham next filed a third "Corrected Amendment to Chapter 13 Plan." JA 76-78. The third amended plan was only three pages long and did not include substantial portions of her original plan. JA 76-78. The Trustee objected to the third, corrected amended plan on the basis that (1) it did not incorporate or re-state the original plan terms; and (2) it did not correct the objectionable language as to vesting. JA 79.

Trantham filed a fourth amended Chapter 13 plan on March 4, 2022. JA 82-89. The March 4, 2022, plan contained the standard

language in section 7.1 as to vesting without any strike through. JA 86. In Section 8.1.17, the plan stated: "[u]ntil an appeal is determined, the property of the Debtor remains vested in the estate at confirmation, and the confirmation order shall explicitly state that property of the Debtor vests in the estate at confirmation, in accordance with the District-approved form language of section 7.1." JA 88-89. The bankruptcy court concluded that Trantham's fourth amended Chapter 13 plan filed on March 4, 2022, satisfied the Trustee's objections, would replace all prior plans, and would be confirmed if no objection was made. JA 90.

No objections were made, and the bankruptcy court entered an order confirming Trantham's Chapter 13 plan on March 30, 2022. JA 91. The bankruptcy court's order confirming the plan stated: "[t]he property of the Debtor vests in the estate at confirmation, in accordance with the District-approved form language of section 7.1 of the amended plan at Docket Entry #26." JA 91.

On April 6, 2022, Trantham appealed the bankruptcy court's order. JA 92-93. After a hearing and oral arguments, the district court affirmed the bankruptcy court's order. JA 98-110. Trantham timely filed a notice of appeal from the district court's order. JA 111-112.

7

## SUMMARY OF THE ARGUMENT

The Western District of North Carolina's adoption of Local Form 4 for Chapter 13 plans—including Section 7.1 as to vesting—was a proper exercise of the rulemaking authority delegated to district and bankruptcy courts.  Local Form 4 is consistent with the Bankruptcy Code and Official Form 113.

The debtor's attempt in this case to rewrite Local Form 4 by striking through the language of Section 7.1 violates the established scheme for the placement of nonstandard provisions and undermines Congress's policy favoring the expeditious administration of bankruptcy cases.

The plain language of the Bankruptcy Code is permissive as to vesting.  There is no requirement that the debtor's property vest in the debtor, rather than the estate, at confirmation.  The Code does not give debtors the sole discretion to choose when property vests in the debtor.

The proper way for a debtor to elect a method of vesting different from the method specified in Section 7.1 of Local Form 4 is to place the nonstandard provision in Section 8.1.7 and nowhere else.  Doing so alerts the trustee, creditors, and the court to a proposed variation in the

local form's usual method of vesting. The bankruptcy court can then consider whether there is an actual controversy requiring a different method of vesting in a particular debtor's case.

Because Trantham did not follow the mandatory procedure for proposing a nonstandard provision in the local Chapter 13 plan form, the bankruptcy court properly sustained the Trustee's objection to confirmation of her proposed plan. In addition, Trantham did not demonstrate a reason why vesting in her case should be treated differently from Section 7.1 of Local Form 4. Therefore, the district court's order affirming the bankruptcy court's ruling should be affirmed.

## ARGUMENT

## I.   STANDARD OF REVIEW

This Court reviews a district court's dismissal for lack of standing *de novo*. *Bishop v. Bartlett*, 575 F.3d 419, 423 (4th Cir. 2009).

When reviewing a district court's decision in a bankruptcy case, this Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 319 (4th Cir. 2001). The facts in this case are

undisputed, so this Court's review of the legal issue is *de novo*. *See*

*Ranta v. Gorman*, 721 F.3d 241, 250 (4th Cir. 2013).

## II.    THE DISTRICT COURT PROPERLY HELD THAT TRANTHAM LACKED STANDING TO APPEAL THE BANKRUPTCY COURT'S ORDER BECAUSE SHE FAILED TO SHOW AN ADVERSE PECUNIARY EFFECT IN HER CASE.

The district court's order should be affirmed because the district

court properly held that Trantham did not have standing to challenge

the bankruptcy court's order sustaining the Trustee's objection to

confirmation. (JA 109).

The test for standing to appeal a bankruptcy court order to a

district court is whether the appellant is a *person aggrieved* by the

order. *See White v. Univision of Va. Inc. (In re Urban Broad. Corp.)*,

401 F.3d 236, 243 (4th Cir. 2005) (citing *In re Clark*, 927 F.2d 793, 795

(4th Cir. 1991)). This Court has defined a "person aggrieved" by a

bankruptcy court order as one who is "directly and adversely affected

pecuniarily" by the order. *Id.* at 244. The "person aggrieved" standard

for appeals from bankruptcy court orders is more stringent than Article

III standing. *Mar-Bow Value Partners, LLC v. McKinsey Recovery &*

*Transformation Servs.*, 469 F. Supp. 3d 505, 524 (E.D. Va. 2020). The

requirement for standing is a "threshold determinant" for judicial

10

intervention, whether standing is determined by the Article III case-or-controversy requirement or as a prudential consideration limiting the role of the courts. *See id.* (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 (1986)).[1]

Trantham lacked standing to appeal to district court because she could not show that she was a "person aggrieved" by the bankruptcy court order. Trantham has minimal assets and failed to assert any specific benefit if property were to vest in her at confirmation rather than upon entry of the final decree. JA 109. The district court relied on *Butala v. Logan (In re Butala)*, No. 5:18-CV-376-FL, 2019 U.S. Dist. LEXIS 27250 (E.D.N.C. Feb. 21, 2019) in holding that Trantham lacked standing to appeal. JA 109. In *Butala*, the United States District Court for the Eastern District of North Carolina held that the debtor lacked standing to challenge the district's local rule requiring motions

---

[1]The Trustee does not challenge Trantham's standing to appeal to this Court. As this Court recently held, a party is not required to meet "the more-exacting person-aggrieved standard" to appeal a lower court's determination that the party lacked standing. *See Hanson Permanente Cement v. Kaiser Gypsum Co. (In re Kaiser Gypsum Co.)*, 60 F. 4th 73, 82 (4th Cir. 2023) (noting that applying the more stringent standard to a district court's holding as to standing would risk leaving parties without legal redress).

to approve sales. *Butala*, 2019 U.S. Dist. LEXIS 27250, at *7. The debtor argued that a local rule requiring debtors to seek approval to incur additional debts above $7,500.00 abridged, enlarged, or modified his right to obtain credit and make purchases. *Id*. at *2. The debtor had withdrawn his motion to incur debt, so there was no substantive request before the bankruptcy court. *Id*. at *4. The district court held that the debtor lacked standing because he had not shown that he was "directly and adversely affected pecuniarily" by the general applicability of the local rules to debtors filing chapter 13 bankruptcy cases in the district. *Id*. at *4-5.

This case is analogous to *Butala*. Trantham cannot meet this Court's standing test because she has shown no adverse pecuniary effect from the vesting provision in Section 7.1 of Local Form 4. Trantham argues that she was harmed by potentially having to pay additional attorneys' fees to file motions to obtain the Trustee's permission to sell property. (Appellant's Brief, p. 19). Trantham owned no real estate and only one car with nominal value. Thus, all of Trantham's property was exempt under 11 U.S.C. § 522 and Bankr. Local Rule 4003-1, as shown on her Schedule C. JA 24-25. Trantham

would be permitted to dispose of any non-exempt estate property valued at $2,500.00 or less without notice to the Trustee.  *See* Bankr. Local Rule 4002-1(e)(1).  Thus, whether Trantham's property vested in herself or in the estate at the time of confirmation had no practical impact on her.

Another harm Trantham claims to be aggrieved by is that to use, sell, or lease property that remains vested in the estate, a debtor must wait seven days for a hearing.  (Appellant's Brief, p. 18).  Trantham identified no property that she intended to use, sell, or lease.  Thus, she suffered no adverse pecuniary effect.  Furthermore, her argument as to the seven-day notice requirement ignores Local Rule 9006-1, which allows a shorter notice period for a hearing when a debtor proves need. *See* Bankr. Local Rule 9006-1.

The district court's holding that Trantham lacked standing was correct.  Trantham failed to establish that she was "directly and adversely affected pecuniarily" by the general applicability of Section 7.1 of Local Form 4.  JA 109.  In the absence of standing, Trantham was not entitled to relief from the bankruptcy court order.  JA 109-110.

III. **SECTION 7.1 OF LOCAL FORM 4—STATING THAT THE DEBTOR'S PROPERTY VESTS IN THE ESTATE AT CONFIRMATION AND IN THE DEBTOR UPON ENTRY OF THE FINAL DECREE—IS CONSISTENT WITH THE BANKRUPTCY CODE AND IS A PROPER EXERCISE OF THE DISTRICT COURT'S RULEMAKING AUTHORITY.**

Two distinct, interrelated concepts govern the legal issue in this case: (1) the plain language of the Bankruptcy Code as to vesting in chapter 13 plans; and (2) the rulemaking procedures for the creation of local rules and forms for the administration of bankruptcy cases.

Applying these concepts to the undisputed facts in this case, the bankruptcy court properly sustained the Trustee's objection to Trantham's chapter 13 plan. The Trustee's objection was properly sustained because: (1) Trantham failed to comply with the requirements for the placement of nonstandard provisions in Local Form 4; (2) Section 7.1 of Local Form 4 is consistent with the Bankruptcy Code and Official Form 113; and (3) Trantham demonstrated no basis for varying Section 7.1 in her case.

### A. Section 7.1 of Local Form 4 is consistent with the Bankruptcy Code because the plain language of the statute permits vesting in the debtor at confirmation or a later time.

The Bankruptcy Code permits estate property to vest in the debtor or another entity at confirmation or at a later time. The Code is unambiguous: debtors may propose—and courts may confirm—chapter 13 plans containing vesting provisions that do not vest estate property in the debtor at confirmation.

### 1. Vesting generally.

A debtor's bankruptcy estate is created at the time the debtor files a bankruptcy petition. 11 U.S.C. § 541(a). The estate broadly includes, among other defined property, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, all of the debtor's property goes into the estate when the debtor files her petition. *Id.* Estate property also includes all property identified in section 541 that the debtor acquires after filing the chapter 13 petition but before the case is closed, dismissed, or converted to a chapter 7, 11, or 12, along with all of the debtor's post-petition earnings. *See* 11 U.S.C. § 1306. "The inclusive scope of the bankruptcy estate reflects the desire of Congress to facilitate the

15

financial rehabilitation of debtors." *Tidewater Fin. Co. v. Moffett (In re Moffett)*, 356 F.3d 518, 521 (4th Cir. 2004).  When a debtor files a chapter 13 bankruptcy petition, 11 U.S.C. § 362(a) imposes an automatic stay to stay enforcement of pre-petition or post-petition liens or creditors' attempts to exercise control over property of the bankruptcy estate.  *Id.* (citing 11 U.S.C. §§ 362(a)(3)-(5)).  The debtor remains in possession of all estate property unless a confirmed plan or a court order confirming a plan provides otherwise.  11 U.S.C. §1306(b).

Although the debtor remains in possession of estate property, estate property that vests in the estate is protected from the reach of creditors by the automatic stay imposed by 11 U.S.C. § 362(a).  "The stay is the most powerful protection the Bankruptcy Code affords debtors." *Sexton v. Dep't of Treasury, IRS (In re Sexton)*, 508 B.R. 646, 657 (Bankr. W.D. Va. 2014).  In addition to protecting debtors, the automatic stay "provide[s] an orderly liquidation procedure under which all creditors are treated equally." *In re Bunch*, 119 B.R. 77, 79 (Bankr. D.S.C. 1990).  Protecting property of the estate through the automatic stay is also important because estate property may be needed to

16

complete the debtor's chapter 13 plan.  *See In re Jones*, 339 B.R. 360,

365 (Bankr. E.D.N.C. 2006).

The automatic stay generally protects the property of the estate

but not the property of the debtor.  *See id.* at 365.[2]

## 2. The plain language of Section 1322(b)(9) and Section 1327(b).

11 U.S.C. § 1322 governs the contents of chapter 13 plans.  11

U.S.C. § 1322(a) contains mandatory provisions that debtors must

include in chapter 13 plans.  11 U.S.C. § 1322(b) contains discretionary

provisions that debtors may include.  As to vesting, the discretionary

provision in subsection (b) states in part:

> (b) Subject to subsections (a) and (c) of this section, the plan may–
> . . .
> (9) provide for the vesting of property of the estate, *on confirmation of the plan or at a later time, in the debtor or in any other entity*;
> . . .

---

[2]*Amici Curiae* argue that "[p]roperty vesting [in the debtor] at confirmation remains protected by the automatic stay." (Amici Brief, at p. 6).  This is incorrect and conflicts with Amici's later statements, which acknowledge that "one automatic stay provision, § 362(a)(3), does terminate at confirmation," and "property that vests in the debtor may be pursued by postpetition creditors." (Amici Brief, at pp. 23-27).

11 U.S.C. § 1322(b)(9) (emphasis added).  The second controlling

statutory provision, 11 U.S.C. § 1327(b), states:

> (b) *Except as otherwise provided in the plan or the order confirming the plan*, the confirmation of a plan vests all of the property of the estate in the debtor.

11 U.S.C. § 1327(b) (emphasis added).

Statutory interpretation requires courts to "implement

congressional intent by examining the plain language of the statute."

*United States v. Passaro*, 577 F.3d 207, 213 (4th Cir. 2009).  In

examining plain language, courts are guided by a fundamental principle

of statutory interpretation, which directs that they "presume that a

legislature says in a statute what it means and means in a statute what

it says there. When the words of a statute are unambiguous, then, this

first canon is also the last: judicial inquiry is complete." *Tankersley v.

Almand*, 837 F.3d 390, 395 (4th Cir. 2016) (cleaned up).

11 U.S.C. § 1322(b)(9) provides for the vesting of property of the

estate "on confirmation of the plan" or "at a later time," and estate

property may vest "in the debtor" or "in any other entity."  11 U.S.C. §

1322(b)(9).  This language unambiguously permits vesting at

confirmation or a later time.  Vesting may be in the debtor or another

entity.  Thus, Section 7.1 of Local Form 4, which vests the debtor's property in the estate at confirmation and in the debtor upon entry of the final decree, is consistent with the options set forth in 11 U.S.C. § 1322(b)(9).

11 U.S.C. § 1327(b) is more specific as to vesting.  Section 1327(b) begins with a broad exception: *"[e]xcept as otherwise provided in the plan or the order confirming the plan."*  11 U.S.C. §1327(b) (emphasis added).  Section 1327(b) then states that, subject to the broad exception, confirmation of a chapter 13 plan vests all estate property in the debtor.  The Code contains no requirements for the broad exception to apply.  The exception is permissive; it allows chapter 13 plans to provide a method of vesting different from vesting in the debtor at confirmation.

Even if 11 U.S.C. § 1327(b) suggests a "default" method of vesting, the broad exception gives both debtors proposing plans and bankruptcy judges confirming plans wide latitude to vary the default method of vesting.

11 U.S.C. § 1322(b)(9) and 11 U.S.C. § 1327(b) are not ambiguous.  The plain meaning of these statutes is that the Code is permissive as to vesting in chapter 13 plans.  "A statute is ambiguous if its language,

19

when read in context, is susceptible to more than one reasonable interpretation." *United States v. Hatcher*, 560 F.3d 222, 231 (4th Cir. 2009) (Shedd, J., dissenting). Even if this Court were to conclude that the Bankruptcy Code is ambiguous as to vesting in chapter 13 cases, this Court must read the two statutes together and give effect to every section of the statute. *See New Cingular Wireless PCS v. Finley*, 674 F.3d 225, 249 (4th Cir. 2012) (noting that if a statute is ambiguous courts turn to other evidence such as the rule of *in pari materia*). The rule of *in pari materia* requires statutes "addressing the same subject matter [to] be read 'as if they were one law.'" *Id.* (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006)). The result of harmonizing 11 U.S.C. § 1322(b)(9) and 11 U.S.C. § 1327(b) is the conclusion that a chapter 13 plan or orders confirming a plan may provide for vesting of the estate in the debtor at confirmation or at a later time. Thus, the Western District of North Carolina Bankruptcy Court's Local Form 4, Section 7.1, is consistent with the Bankruptcy Code.

*Amici Curiae* the National Association of Consumer Bankruptcy Attorneys and National Consumer Bankruptcy Rights Center ("Amici") incorrectly argue that the Western District's Local Form 4 alters several

Bankruptcy Code provisions. (Amici Brief, pp. 10-13). Section 7.1 of Local Form 4 is consistent with the Bankruptcy Code, which is permissive as to vesting. Thus, Section 7.1 does not require rewriting the Bankruptcy Code. Furthermore, Amici's argument assumes that debtors cannot include a nonstandard provision in the proper section when justified by an actual impact on a specific debtor.

**B. The Western District's adoption of Local Form 4 was a proper exercise of its rulemaking authority, and Local Form 4 is consistent with Official Form 113.**

The delegation of rulemaking authority gives district courts—and bankruptcy judges if districts delegate authority to them—the power to create local forms that are consistent with the Official Forms. The Western District of North Carolina adopted Local Form 4 pursuant to the rulemaking authority delegated by Congress. Local Form 4 is consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and Official Form 113.

**1. The Federal Rules of Bankruptcy Procedure delegate rulemaking authority to district courts to make and amend rules of practice and procedure for bankruptcy cases.**

Bankruptcy courts' authority to promulgate rules is a derivative power stemming from the Bankruptcy Rules' enabling statute. *See* 28

21

U.S.C. § 2075.  In 28 U.S.C. § 2075, Congress delegated to the Supreme Court "the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11."  28 U.S.C. § 2075.  The Supreme Court issued the Federal Rules of Bankruptcy Procedure under this authority.  *See* Fed. R. Bankr. P. 1001 *et seq*.  The Bankruptcy Rules and Official Forms govern procedure in cases under title 11 of the United States Code. Fed. R. Bankr. P. 1001.  The Bankruptcy Rules "shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding."  Fed. R. Bankr. P. 1001.

Federal Rule of Bankruptcy Procedure 9029 permits district courts to make rules governing bankruptcy practice and procedure. Fed. R. Bankr. P. 9029.  Rules promulgated by district courts must be consistent with—but not duplicative of—bankruptcy statutes and may not prohibit or limit use of the Official Forms.  *Id*.  District courts may delegate to bankruptcy judges the authority to make the rules of practice and procedure, which also must be consistent with—but not

duplicative of—bankruptcy statutes and may not prohibit or limit use of the Official Forms.  *Id.*[3]

Federal Rule of Bankruptcy Procedure 9009(a) requires use of the Official Forms without alteration *except as otherwise provided in the Bankruptcy Rules*.  Fed. R. Bankr. P. 9009(a) (emphasis added).

In 2017, the Bankruptcy Rules were amended to allow district courts to create their own local forms.  Fed. R. Bankr. P. 3015.1; *see also* 9 Collier on Bankruptcy ¶ 3015.1.01 (noting that Rule 3015.1 permits local districts to "opt out" of using the required national chapter 13 plan form).  Federal Rule of Bankruptcy Procedure 3015(c) was also amended in 2017 to require use of the Official Form for chapter 13 plans unless districts have adopted a Local Form in compliance with Rule 3015.1.  Fed. R. Bankr. P. 3015(c); *see also* advisory committee's notes to 2017 amendments.  Rule 3015.1 includes numerous conditions for chapter 13 local plan forms.  *See* Fed. R. Bankr. P. 3015.1.  Importantly, Rule 3015.1 requires public notice and an opportunity for public comment

---

[3]The district court's delegation of authority to bankruptcy judges is limited by Federal Rule of Civil Procedure 83 and any additional limitations imposed by the district court.  Fed. R. Bankr. P. 9029.

when districts adopt chapter 13 local plan forms.  Fed. R. Bankr. P.

3015.1(a).

Mandating the use of a plan form serves several purposes:

> Using a plan form permits the Chapter 13
> trustees and attorneys for creditors frequently
> appearing to review the plans more quickly
> and efficiently.   It also enables debtors'
> attorneys to prepare plans more quickly and
> efficiently.  Uniformity helps to control the
> costs of pursuing a chapter 13 case through
> confirmation and prevents chapter 13 plans
> from taking on the time and expense
> associated with chapter 11.

9 Collier on Bankruptcy ¶ 3015.1.01 (quoting *In re Solitro*, 382 B.R. 150,

152 (Bankr. D. Mass. 2008)).

### 2. The Western District's bankruptcy judges complied with the rulemaking requirements in enacting the Local Rules, including Local Form 4.

In July 2021, the Western District of North Carolina Bankruptcy

Court completed revisions to its Rules of Practice and Procedure (the

"Local Rules").[4]  The bankruptcy court published the revised version of

the Local Rules on July 14, 2021, for a 30-day comment period.[5]  The

court provided a link for the bar and general public to access the revised

---

[4]https://www.ncwb.uscourts.gov/news/local-rules-comment-period
[5]*Id.*

Local Rules and provided an address for comments, which the court would accept through August 16, 2021.[6]  The proposed Local Form 4 for chapter 13 plans was included with the published revised Local Rules in Appendix B, Local Forms.[7]  The Western District of North Carolina Bankruptcy Court complied with the requirements of Federal Rule of Bankruptcy Procedure 3015.1.[8]

### 3. The Western District's Local Form 4 is consistent with the Bankruptcy Code and Official Form 113.

Vesting is permissive under 11 U.S.C. § 1322(b)(9) and § 1327(b).  *See* discussion *supra*, pp. 15-20.  Thus, Section 7.1 of Local Form 4 is consistent with the Bankruptcy Code.  8 Collier on Bankruptcy ¶ 1322.13 ("a plan may provide that property of the estate will not vest in the debtor until the closing of the case").

---

[6]*Id.*

[7]https://www.ncwb.uscourts.gov/sites/ncwb/files/WDNC (the proposed Local Form 4 is located at pages 132-145 of the pdf of the proposed Western District of North Carolina Bankruptcy Rules 2021).

[8]Trantham and Amici have not challenged the Western District of North Carolina's rulemaking process, nor have they argued that the Western District of North Carolina's bankruptcy judges failed to meet the mandatory requirements for rulemaking.

25

Section 7.1 of Local Form 4 is also consistent with Official Form

113.[9]  Prominently placed at the beginning of Official Form 113, in Part

1, is a Notice to Debtors:

> This form sets out options that may be appropriate
> in some cases, but the presence of an option on the
> form *does not indicate that the option is appropriate*
> *in your circumstances or that it is permissible in*
> *your judicial district.  Plans that do not comply*
> *with local rules and judicial rulings may not be*
> *confirmable.*

Official Form 113, Part 1, p.1 (emphasis added).  Official Form 113

acknowledges that optional language may not be permissible in a

debtor's district.  *Id*.  The Official Form advises debtors that their

proposed plans must comply with both local rules and judicial rulings.

*Id*.

Official Form 113 is permissive as to vesting, consistent with the

plain language of 11 U.S.C. § 1322(b)(9) and § 1327(b).  Part 7 of Official

Form 113 provides three options for vesting of estate property in the

debtor: "(1) plan confirmation; (2) entry of discharge; or (3) other:

_____."  Official Form 113, p. 7.  The Western District's provision in

---

[9]https://www.uscourts.gov/sites/default/files/b_113_and_cn_0.pdf;
*see also* Appellant's Brief, pp. 23-31 (copy of Official Form 113).

Section 7.1 stating that "[a]ll property of the Debtor remains vested in the estate and will vest in the Debtor upon entry of the final decree" does not conflict with, and therefore is consistent with, the Official Form.

Amici point to the wide variety of treatment of vesting in the Fourth Circuit's district courts as proof that debtors' rights are violated. (Amici Brief, pp. 2-4). The fact that vesting is treated differently under various local forms in the Fourth Circuit is a result of district courts exercising their rulemaking authority, which is permitted by Federal Rules of Bankruptcy Procedure 9029, 3015, and 3015.1. The majority of district courts in the Fourth Circuit, five of the nine, provide for vesting of the estate at discharge or entry of the final decree. (Amici Brief, pp. 2-3). Bankruptcy courts acknowledge that courts within various jurisdictions treat vesting differently. *See, e.g., In re Jones*, 339 B.R. 360, 365 n.1 (E.D.N.C. 2006) (citing *In re Johnson*, 335 B.R. 805, 806) (Bankr. W.D. Tenn. 2006) (noting that "[s]ome courts routinely provide that the debtor's property remains property of the estate until the plan is completed").

The district court analyzed the impact of vesting in the debtor at confirmation and concluded that "risks to a debtor of vesting at confirmation are significant." JA 105. The district court also considered the relationship between vesting in the debtor at confirmation and other portions of the Bankruptcy Code. JA 106-08. This Court is not required, however, in this case to address the question of whether vesting in the estate or the debtor at confirmation is preferable. The statute is permissive, and the Western District of North Carolina's decision to vest property in the estate at confirmation is consistent with the Bankruptcy Code and is a proper exercise of its rulemaking authority.[10]

Finally, the different treatment of vesting does not violate the Bankruptcy Clause of the United States Constitution. *See* U.S. Const., Art. 1, § 8, cl. 4 (granting Congress the power to establish uniform laws for bankruptcies throughout the United States). The allowance for bankruptcy districts to adopt different standard methods of vesting in their local forms is consistent with the flexibility permitted by the

---

[10]Trantham attempting to rewrite Local Form 4 impermissibly seeks an advisory opinion as to vesting. *See* discussion *infra*, pp. 32-33.

Bankruptcy Clause. *See Siegel v. Fitzgerald*, 142 S. Ct. 1770, 1775 (2022). Historically, district courts have been permitted local variation in procedures for bankruptcy matters, such as establishing fees and tariffs and choosing whether to participate in a bankruptcy appellate panel if the circuit has created one. *Id.* at 1779-80. In *Siegel*, the Supreme Court held that a fee increase that applied differently to identical chapter 11 debtors in different regions—requiring the petitioner to pay over $500,000 more in fees than an identical debtor in another region of the country—violated the uniformity requirement of the Bankruptcy Clause. *Id.* at 1782-83. The fee increase in *Siegel* resulted in the arbitrary, disparate treatment of identically situated debtors—a result the Supreme Court held the Bankruptcy Clause does not permit. *Id.* at 1781. The fee increase was caused in part by the difference between the Trustee Program and the Administrator Program, an "artificial funding distinction" that Congress itself had created. *Id.* at 1782.

Here, the permissive vesting provisions of 11 U.S.C. § 1322(b)(9) and 11 U.S.C. § 1327(b), coupled with the rulemaking procedures in the Federal Rules of Bankruptcy Procedure, give district courts the

flexibility to establish by local form a standard method of vesting—in keeping with the allowance for "local variation or choice." *See id.* at 1780. The bankruptcy court retains discretion, however, to vary a district's standard method when the debtor complies with the requirements for the placement of nonstandard provisions and when justified in a particular debtor's case. There is a uniform basic framework for chapter 13 plans across the country, but within this basic framework, district courts are given latitude to create uniform local plan forms. The uniformity requirement of the Bankruptcy Code does not demand that Congress "forbid or eliminate such local variation or choice." *Id.*

### 4. Debtors must include nonstandard provisions in Section 8.1.7 of the Local Form—and nowhere else.

Bankruptcy Rules 3015(c) and 3015.1 give chapter 13 debtors the flexibility to propose nonstandard provisions in their plans, by placing the nonstandard provision in the proper section for nonstandard provisions. *See* Fed. R. Bankr. P. 3015(c); 3015.1. Federal Rule of Bankruptcy Procedure 3015(c) states in part: "[w]ith either the Official Form or a Local Form, a nonstandard provision is effective *only if* it is included in a section of the form designated for nonstandard provisions

and is also identified in accordance with any other requirements of the form." Fed. R. Bankr. P. 3015(c) (emphasis added).

When Official Form 113 was created in December 2017, the Committee drafters identified Part 8 of Official Form 113 for "Nonstandard Plan Provisions."[11] Part 8 gives debtors "the opportunity to propose provisions that are not otherwise in, or that deviate from, the Official Form."[12] As to Part 8, the drafters' Committee Note states: "[a]ll such nonstandard provisions must be set forth in this part *and nowhere else in the plan.*"[13]

Trantham's striking through Section 7.1 of Local Form 4 invalidated her proposed nonstandard provision. Striking through Section 7.1 violated Rule 3015(c) because under that rule, a nonstandard provision is effective *only if* it is included in the section of the form designated for nonstandard provisions. Furthermore, nonstandard provisions must be set forth in the section identified *and nowhere else in the plan.* Local Form plans exist "to facilitate review by

---

[11]https://www.usco.urts.gov/sites/default/files/b_113_and_cn_0.pdf (Official Form 113 committee notes December 2017).

[12]*Id.*

[13]*Id.* (emphasis added).

the court, the chapter 13 trustee, and the creditors." *In re Mank*, 19-04199-5-SWH, 2020 Bankr. LEXIS 657 (Bankr. E.D.N.C. Mar. 10, 2020).

In *Mank*, the debtor proposed two nonstandard provisions: one precluding the trustee from filing motions under Federal Rule of Bankruptcy Procedure 9019 and another specifying that all property vested in the debtor upon confirmation, along with a statement that the debtor would not need to give notice under 11 U.S.C. § 363(b) to use, sell, or lease property outside the ordinary course. *Id*. at *1-2. The bankruptcy court considered both nonstandard provisions and concluded that no actual controversy relating to the debtor's specific financial circumstances existed as to the application of either nonstandard provision. *Id*. at *7, 14. Noting that similar nonstandard provisions had been included in other debtors' plans, the bankruptcy court concluded that debtors' attorneys were seeking to create "standard nonstandard" provisions without complying with the procedure for altering the Local Form. *Id*. at *8. The court noted that it was not attempting to eliminate debtors' rights to include nonstandard provisions in their plans. *Id*. at *10. The court held, however, that

debtors may not include nonstandard provisions to obtain advisory opinions or to clarify the law on a particular issue. *Id*. at *6, 13. The *Mank* case is directly on point. Trantham has shown no specific facts warranting a special provision as to vesting in her case. It appears that she has included the nonstandard provision to attempt to rewrite Local Form 4 or to obtain an advisory opinion as to the law relating to vesting. Nonstandard provisions should not be "used as a mechanism to resolve legal uncertainties when no controversy actually exists in the debtor's case." *Id*. at 14.

The system for placement of nonstandard provisions was not established by the Western District of North Carolina. It is established in Federal Rules of Bankruptcy Procedure 3015(c) and 3015.1. The system must be followed on Official Form 113 as well as local chapter 13 plan forms. The proper way for debtors to include a provision that differs from Local Form 4 is to include the nonstandard provision in Section 8.1.7 of the local form and nowhere else. In sustaining the Trustee's objection to Trantham's proposed chapter 13 plan, the bankruptcy court properly reasoned that "[s]tandard plan forms are essential for courts to promote efficiency and consistency." JA 97 (citing

33

*In re McIntosh*, No. 12-46715-399, 2012 WL 6005761, at *6 (Bankr. E.D. Mo. Nov. 30, 2012)).  In affirming the bankruptcy court's ruling, the district court similarly reasoned that "local form plans exist for the purpose of facilitating review by the parties in interest in a chapter 13 case." JA 103 (citing *Mank*, No. 19-04199, 2020 Bankr. LEXIS 657).

Trantham is correct in arguing that debtors have the exclusive right to propose a chapter 13 plan.  *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 505 (2015).  In proposing their chapter 13 plans, however, debtors are restricted by the official or local forms.  The forms provide consistency and predictability for all parties involved in the bankruptcy process.  Debtors do not have the unfettered right to include nonstandard provisions in sections other than the section specified for nonstandard provisions or to strike through other form provisions.  Taking this argument to its logical conclusion, debtors could propose any plan they want—regardless of the official and local forms.

### 5. Section 7.1 of Local Form 4 does not abridge, enlarge, or modify a substantive right.

The Bankruptcy Rules' enabling statute provides that rules regulating practice and procedure under the Bankruptcy Act "shall not abridge, enlarge, or modify any substantive right."  28 U.S.C. § 2075.

34

This Court has stated that in determining whether a rule is substantive or procedural, courts must consider the following distinction:

> [i]f a regulation or rule enforces rights or imposes definite obligations on the parties, it is ordinarily considered substantive. If, however, it 'really regulates procedure,' . . .the rule is to be deemed procedural.

*Associated Dry Goods Corp. v. EEOC*, 720 F.2d 804, 809 (4th Cir. 1983) (citing *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)).

In *In re Walat*, 87 B.R. 408, 411 (Bankr. E.D. Va. 1988), the bankruptcy court for the Eastern District of Virginia considered debtors' challenge to the bankruptcy court's authority to require a form chapter 13 plan by local rule.[14]  The court described the interrelated nature of rulemaking limitations: "[i]f a rule abridges, enlarges, or modifies a substantive right [it] cannot be classified as practice or procedure." *Walat*, 87 B.R. at 411.  The court further noted that "[r]ules promulgated under 28 U.S.C. § 2075 are entitled to a presumption that

---

[14]*In re Walat* was decided prior to the 2017 amendments creating Fed. R. Bankr. P. 3015.1 and amending Fed. R. Bankr. P. 3015, which codified by rule the local bankruptcy courts' practice of creating local forms for chapter 13 plans. *See In re Walat*, 87 B.R. 408, 411 (Bankr. E.D. Va. 1988).  The bankruptcy court noted that the required chapter 13 plan form was adopted to facilitate processing the large volume of chapter 13 cases and to "advance the efficient use of court time." *Id.*

they were promulgated with the proper authority and do not affect a substantive right." *Id.* (collecting cases) (stating that the presumption attaching to rules promulgated under 28 U.S.C. § 2075 should be applied to bankruptcy courts' derivative rule making power). In light of the presumption that bankruptcy courts' local rules do not affect a substantive right, "parties objecting to a local rule as a substantive change in bankruptcy law [have] a heavy burden to prove their case." *Id.*

In *Walat*, the bankruptcy court concluded that the local rule establishing and requiring compliance with a form chapter 13 plan did not affect the parties' substantive rights under title 11 but merely dictated the procedure by which the bankruptcy court considered the contents and confirmation of a debtor's chapter 13 plan. *Id.* at 412. The court noted that "[t]he bankruptcy court's power to make rules governing practice and procedure includes the power 'to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either.'" *In re Walat*, 87 B.R. 408, 412 n.1 (Bankr. E.D. Va. 1988) (citing *Hanna v. Plumer*, 380 U.S. 460, 472 (1965) and *Bonner v. Adams*, 734

36

F.2d 1094, 1102 (5th Cir. 1984)).  Thus, the court concluded that "[e]ven if one were to assume that the form plan could be classified as substance, it is also rationally capable of classification as procedure and therefore susceptible to regulation under this Court's rule making authority." *Id*.

*Walat* is directly on point and follows this Court's precedent in the area of rulemaking pursuant to the delegation in 28 U.S.C. § 2075 and Federal Bankruptcy Rule 9029.   The plain language of 11 U.S.C. § 1322(b)(9) and 11 U.S.C. § 1327(b) is permissive as to vesting.  *See* discussion *supra*, pp. 15-20.  Bankruptcy Rules 9029, 3015, and 3015.1 permit district courts and bankruptcy judges to create local rules and local plan forms to facilitate chapter 13 confirmations.  The creation of local plan forms, including different provisions for vesting, is "rationally capable of classification as procedure." *See Walat*, 87 B.R. at 412 n.1.

District courts and bankruptcy judges can—by local rules and forms—establish a vesting provision that they determine will promote efficiency and provide fairness to interested parties.  Professor John Hart Ely proposed the following definition of the substantive/procedural distinction:

37

> (A) procedural rule . . . is one designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes. Thus, one way of doing things may be chosen over another because it is thought to be more likely to get at the truth, or better calculated to give the parties a fair opportunity to present their sides of the story, or because . . . it is a means of promoting the efficiency of the process.

*In re Decker*, 595 F.2d 185, 189 n.4 (3d Cir. 1979) (citing Ely, *The Irrepressible Myth of Erie*, 87 Harv. L. Rev. 693, 724-25 (1974)). The creation of local chapter 13 plan forms, including vesting provisions, are capable of classification as a procedural rule and do not abridge a substantive right.

Trantham and Amici rely on *Diaz v. Viegelahn* (*In re Diaz*), 972 F.3d 713 (5th Cir. 2020) and *Moncur v. Agricredit Acceptance Co. (In re Moncur)*, 328 B.R. 183, 191 (B.A.P. 9th Cir. 2005) to support their argument that Section 7.1 of the Western District's Local Form 4 abridges a substantive right. (Appellant's Brief, pp. 12, 14; Amici Brief, p. 10). Both cases are distinguishable.

In *In re Diaz*, the United States District Court for the Western District of Texas had adopted a provision in Section 4.1 of its local chapter 13 plan requiring debtors to turn over to the trustee any tax

38

refund amounts the debtor received in excess of $2,000.00. *Diaz*, 972 F.3d at 715. In her first amended chapter 13 plan, Diaz struck through Section 4.1 of the local form. *Id*. at 716. She also amended her Schedule I to amortize, on a monthly basis, the full amount of her tax refund—$3,261.00—so that she would receive the full amount as "other monthly income" in twelve payments. *Id*. In her amended Schedule J, Diaz included monthly expenses that offset the monthly tax refund income. *Id*. The trustee objected to Diaz's first amended plan. *Id*. Diaz filed a second amended plan that did not strike through Section 4.1 but included a nonstandard provision in Section 8 stating that the provisions of Section 4.1 were null and void and that she was required to amortize her refund. *Id*.

The Fifth Circuit held that Section 4.1 of the local form was invalid because it abridged debtors' substantive rights under 11 U.S.C. § 1325(b)(2) and conflicted with the Supreme Court's guidance in *Hamilton v. Lanning*, 560 U.S. 505 (2010). *Diaz*, 972 F.3d at 715. The statute, 11 U.S.C. § 1325(b)(2), defines a debtor's "disposable income" as current monthly income received by the debtor less amounts reasonably necessary to be expended for the debtor's or a dependent's maintenance

or support.  11 U.S.C. § 1325(b)(2).  The Fifth Circuit looked to guidance

in *Lanning*, in which the Supreme Court made clear that the

Bankruptcy Code requires courts to treat above- and below-median

debtors' "disposable income" differently.  *Id*. at 718.  The Fifth Circuit

concluded that section 1325(b)(2) of the Code, as clarified in *Lanning*,

plainly allows below-median income debtors to retain any income that

is reasonably necessary for their maintenance and support.  *Id*.  Thus,

the court agreed with Diaz that as a below-median income debtor, the

Bankruptcy Code and *Lanning* allowed her to retain any tax refund

amount she received in excess of $2,000.00 if she could demonstrate

that the funds were "reasonably necessary" for her family's

"maintenance and support."  *Id*.  Finding a conflict between Section 4.1

of the local form and section 1325(b) of the Bankruptcy Code and the

Supreme Court's guidance in *Lanning*, the Fifth Circuit held Section 4.1

of the local form to be invalid.  *Id*. at 719.  Importantly, the Fifth Circuit

declined to instruct the district court in the manner in which it should

treat tax refunds in its local form, noting that only "a district" may

promulgate a "Local Form for a plan filed in a chapter 13 case."  *Id*. at

720 (citing Bankruptcy Rule 3015.1).

40

Amici's reliance on *Moncur v. Agricredit Acceptance Co. (In re Moncur)*, 328 B.R. 183, 191 (B.A.P. 9th Cir. 2005) is also misplaced. (Amici Brief, p. 10). First, *In re Moncur* was decided in 2005, prior to the 2017 enactment of Federal Rule of Bankruptcy Procedure 3015.1. *Moncur*, 328 B.R. 183. In *Moncur*, the Ninth Circuit held that the local form that deviated from the official form for chapter 7 discharges conflicted with the Bankruptcy Code. *Id.* at 192. The Ninth Circuit noted that the local form's alteration to Official Form 18 appeared to have been based on section 14f of the Bankruptcy Act of 1898. *Id.* at 191. The Ninth Circuit held that the alteration abridged the statutory terms of discharge, which did not permit courts to carve out exceptions to debts that the Bankruptcy Court established as excepted from discharge. *Id.* Unlike *Diaz* and *Moncur*, in this case, the vesting provision in Section 7.1 does not abridge a substantive right, because the plain language of the Bankruptcy Code does not give debtors a substantive right to have property vest in the debtor at the time of confirmation.

### 6. Requiring debtors to use official or local forms promotes the efficient administration of bankruptcy cases.

One of the Bankruptcy Code's most important policies is facilitating the efficient administration of bankruptcy cases. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 505 (2015) (noting that "expedition is always an important consideration in bankruptcy"). Requiring debtors to use official or local forms expedites review and streamlines the chapter 13 confirmation process. As the bankruptcy court and district court reasoned in this case, "[s]tandard plan forms are essential for courts to promote efficiency and consistency." JA 97, 102-03 (citing *In re McIntosh*, No. 12-46715-399, 2012 WL 6005761, at *3 (Bankr. E.D. Mo. Nov. 30, 2012)).

Although the primary purpose of bankruptcy is to give debtors a "fresh start," the entire focus of bankruptcy is not on a favorable result for debtors at the expense of creditors' interests. *See Bullard*, 575 U.S. at 505 (noting that debtors are encouraged to work with creditors and the trustee to develop a confirmable chapter 13 plan). The Bankruptcy Code has a "dual mandate" and seeks to strike a balance between the

42

interests of creditors and debtors.  *Janvey v. Romero*, 883 F.3d 406, 410-11 (4th Cir. 2018).

Requiring nonstandard provisions to be placed in a specific section of the local form—and nowhere else—alerts interested parties to a debtor's proposed variation.  The trustee and creditors may object, which creates an issue for the bankruptcy court to resolve.  *See, e.g., In re Olszewski*, 580 B.R. 189 (Bankr. D.S.C. 2017).  In *Olszewski*, the debtor placed a nonstandard provision in the district's local chapter 13 plan form, proposing that real property vest in the first mortgage holders upon plan confirmation.  *Olszewski*, 580 B.R. at 190.[15]  The secured creditors failed to object to the nonstandard vesting provision despite proper notice.  *Id*.  The bankruptcy court held that in the absence of a timely objection, the creditors accepted the plan, including the nonstandard vesting provision.  *Id*. at 193; *see also In re Achinivu*, 612 B.R. 860, 865 & n.8 (Bankr. D.N.J. 2020) (creditors who failed to

---

[15]The debtor also included a provision stating that he would surrender the real property upon plan confirmation.  *In re Olszewski*, 580 B.R. 189, 190-91 (Bankr. D.S.C. 2017) (distinguishing "surrender" of property under 11 U.S.C. § 1325(a)(5)(c) from "vesting" under 11 U.S.C. § 1322(b)(9)).

43

object to debtor's attempt to "force vesting" were required to assume all

ongoing and future maintenance responsibilities for real property).

Using local plan forms—including the section for nonstandard

provisions—facilitated the orderly review of the debtor's proposed

chapter 13 plan in *Olszewski*.  The *Olszewski* case is an example of the

local form process working as it should.

### IV.  THE STATUTE DOES NOT GIVE THE DEBTOR THE SOLE DISCRETION TO DETERMINE THE TIME OF VESTING.

Trantham argues that a chapter 13 debtor has the sole discretion

and exclusive right to determine the time of vesting. (Appellant's Brief,

p. 9-11).  Appellant, however, is reading language into the statute that

is not there.  If Congress intended to give debtors the sole and exclusive

right to determine the time and method of vesting, Congress is required

to state so explicitly.

Trantham relies on *Law v. Siegel*, 571 U.S. 415 (2014) to support

her argument that the debtor has the sole discretion to choose the

method of vesting.  (Appellant's Brief, pp. 10-11, 17-18; *see also* Amici

Brief, p. 27).  In *Siegel*, the debtor claimed a false lien on his primary

residence to prevent the trustee and creditors from obtaining non-

44

exempt equity in the residence. *Siegel*, 571 U.S. at 419-20. The trustee placed a "surcharge" on the debtor's homestead exemption to defray legal fees over the false lien. *Id*. at 420. The Supreme Court held that the bankruptcy court erred in permitting the trustee's surcharge because it contravened 11 U.S.C. § 522, which authorizes debtors to claim certain kinds of property exempt from the estate. *Id*. at 422.

Trantham argues that she has the sole discretion to determine the time of vesting because 11 U.S.C. § 1322(b) is analogous to 11 U.S.C. § 522. (Appellant's Brief, pp. 10-11). The statutory language of section 522 of the Code states: "[n]otwithstanding [section 541 of this title], an *individual debtor may exempt* from property of the estate the property listed in [paragraph 2 or 3]." 11 U.S.C. § 522(b)(1) (emphasis added). The Supreme Court reasoned that "the subject of 'may exempt' in § 522(b) is the *debtor*, not the court, so it is the debtor in whom the statute vests discretion" to exempt certain property. *Siegel*, 571 U.S. at 424 (emphasis added). *Siegel* does not support Trantham's argument, however, because 11 U.S.C. § 1322(b) does not have "debtor" as a subject, grammatically, as § 522(b) does. Section 1322(b)(9) states: "[s]ubject to subsections (a) and (c) of this section, the *plan* may— . . .

45

provide for vesting of property of the estate, on confirmation of the plan

or at a later time, in the debtor or in any other entity".  11 U.S.C. §

1322(b)(9) (emphasis added).  The subject of the phrase in section

1322(b)(9) is the *plan*, not the *debtor*.  A debtor proposes a plan, which

is confirmed after the debtor works with the trustee and creditors, and,

if necessary, the court holds a hearing on any objections.  Under the

plain language of section 1322(b)(9), the debtor does not have the sole

discretion to determine the method and time of vesting—the plan

provides for vesting.  The Supreme Court's application in *Siegel* of

different language in section 522 of the Code does not support

Trantham's argument.

Trantham also relies on *Bullard v. Blue Hills Bank*, 575 U.S. 496

(2015) to argue that debtors have the sole and exclusive right under the

Bankruptcy Code to choose the time and method of vesting. (Appellant's

Brief, pp. 9-10).  While it is true that debtors have the exclusive right to

propose and modify chapter 13 plans, the statute does not state that

debtors have complete freedom—regardless of the local rules, official

forms, and local forms—to propose a chapter 13 plan in which anything

46

goes. *Bullard* states that debtors have to work with creditors and trustees to develop a confirmable plan. *Bullard*, 575 U.S. at 505.

Trantham and Amici's argument that this Court should give *all the discretion* to debtors and permit them to rewrite local form provisions with which they disagree ignores the important role of trustees, creditors, and bankruptcy courts in the bankruptcy process. Courts rely on trustees to review all provisions of proposed chapter 13 plans. *See In re Rosa*, 495 B.R. 522, 523-24 (Bankr. D. Haw. 2013). Trantham expresses concern about trustees abusing their authority and trampling "a debtor's rights under the Code without any recourse available to the debtor." (Appellant's Brief, p. 20). Debtors, however, receive a fresh start by filing for chapter 13 bankruptcy protection. In providing a fresh start to debtors, bankruptcy courts have the duty to administer the bankruptcy estate fairly—to protect the debtor, balance the interests of creditors, and prevent fraud upon the court. *See Janvey v. Romero*, 883 F.3d 406, 417 (4th Cir. 2018).

Shifting all the discretion to the debtor in chapter 13 process is not supported by the statute or the policies underlying the Bankruptcy Code. Trantham and Amici would create an "exclusive right" for

47

debtors to decide the method and time of vesting of estate property in a chapter 13 bankruptcy case where Congress has not done so. This Court should decline to create a right that has not been established by Congress in the plain language of the Bankruptcy Code. Furthermore, bankruptcy courts retain discretion to approve a debtor's preferred method and time of vesting if the debtor follows the requirements for the placement of nonstandard provisions and demonstrates a potential negative impact justifying varying the local form. Here, Trantham did neither. Thus, the bankruptcy court properly sustained the Trustee's objection to her initial chapter 13 plan.

## V. THE SEVENTH CIRCUIT'S DECISION IN *IN RE CHERRY* IS CONTRARY TO THE PLAIN LANGUAGE OF THE STATUTE, AND THIS COURT SHOULD NOT ADOPT THE HOLDING OF *IN RE CHERRY*.

Amici relies on *In re Cherry*, 963 F.3d 717 (7th Cir. 2020) to argue that: (1) section 1327(b) creates a presumption of estate property vesting in the debtor at confirmation; and (2) courts may create a local form or confirm a plan holding property in the estate only after finding a good case-specific reason for doing so. (Amici Brief, pp. 5, 14-15). The Seventh Circuit's ruling in *In re Cherry*, however, is contrary to the plain language of the statute and is also distinguishable on the facts.

48

*In re Cherry* was the third in a line of cases addressing debtors'
attempts to avoid paying parking fines in the city of Chicago. *Cherry*,
963 F.3d at 718-19 (citing *In re Steenes*, 918 F.3d 554 (7th Cir. 2019)
(*Steenes I*) and *In re Steenes*, 942 F.3d 834 (7th Cir. 2019) (*Steenes II*)).
The debtors' avoidance of fines was pervasive enough to cause the
bankruptcy judges in the Northern District of Illinois to alter their local
chapter 13 plan form to vest debtor's property in the debtor rather than
the estate. *Cherry*, 963 F.3d at 718. The court, however, added a
checkbox to a different local form, allowing debtors to continue to elect
vesting in the estate at confirmation—which allowed the debtors to
continue to avoid paying the parking fines. *See id*.

The City of Chicago objected to confirmation of plans in which the
box was checked, requiring a hearing. *Id*. The bankruptcy court denied
the City's objection and approved the lead debtor's plan. *Id*.[16] The
Seventh Circuit concluded that section 1327(b) establishes a statutory
presumption that property vests in the debtor—and debtors, by
checking a box, or judges, by creating a form order—may not depart

_____

[16]The Seventh Circuit accepted a direct appeal from the
bankruptcy court, bypassing the district court. *In re Cherry*, 963 F.3d
at 717, 719 (7th Cir.  2020).

49

from the "statutory norm" without justification.  *Id*. at 719.  The

Seventh Circuit's decision is contrary to the Bankruptcy Code and the

Federal Rules of Bankruptcy Procedure.  Local form plans may provide,

by default, for estate property to vest in the debtor at discharge.  *See*

discussion *supra*, p. 20; *see also* 8 Collier on Bankruptcy ¶ 1327.03 n.7.

As the authors of Collier's treatise on bankruptcy stated, the Seventh

Circuit in *Cherry* "held, *without statutory support*, that vesting of

property of the estate in the debtor can be delayed only if court finds

case-specific cause for such delay."  8 Collier on Bankruptcy ¶ 1327.03

n.7 (emphasis added).

The facts in *Cherry* are distinct from this case.  Here, Trantham

attempted to rewrite the Western District's Local Form 4, which

violated the scheme for nonstandard provisions.  In *Cherry*, the issue of

a debtor's failure to comply with Bankruptcy Rule 3015(c) by

improperly rewriting a local form was not at issue.  There, the district's

addition of a checkbox to a different local form allowed debtors to elect

vesting in the estate at confirmation regardless of their chapter 13 plan.

Amici's brief is not entirely clear on the portions of *Cherry* that it

suggests this Court follow.  (Amici Brief, p. 15) (stating that "*Amici* are

not advocating for this court to follow *Cherry*").  Amici argue that "[a] Chapter 13 debtor has discretion under section 1322(b)(9) to choose whether property of the estate vests at confirmation; no evidence justifying this selection needs to be presented."  (Amici Brief, p. 15). The Seventh Circuit, however, was troubled by debtors' assertions that they had the exclusive right to select the method of vesting of their property in chapter 13 cases because of the potential for abuse.  *Cherry*, 963 F.3d at 719 (rejecting debtors' argument that a debtor's choice prevails even if it is made to avoid the payment of fines).  Thus, Amici's argument that a Chapter 13 debtor has the sole discretion to choose when property of the estate vests is contrary to the court's reasoning in *In re Cherry.  See id*. at 718-19.

The Seventh Circuit appears to have made a results-oriented decision after debtors continued to abuse the bankruptcy process to avoid paying obligations that other non-debtors must pay.  *Id*. at 718 (stating that "[u]sing the bankruptcy process to enable debtors to operate cars while avoiding the costs that others must pay is not appropriate").  The Seventh Circuit's holding that judges through a form order may not vest property in the estate at confirmation without

51

justification is not supported by the Bankruptcy Code and the Federal

Rules of Bankruptcy Procedure. This Court should not adopt *In re*

*Cherry*'s holding as the law of this Circuit.

## VI. THE *LVNV* CASE IS NOT CONTROLLING.

Appellant and Amici rely on *LVNV Funding, LLC v. Harling*, 852

F.3d 367, 368 (4th Cir. 2017) to argue that courts must confirm plans

when debtors meet the statutory requirements of 11 U.S.C. §§ 1322 and

1325. (Appellant's Brief, pp. 9, 11; Amici Brief, p. 17). *LVNV* related to

the validity of contested individual unsecured claims and to the

application of res judicata based on the confirmation of a debtor's

Chapter 13 plan. *LVNV*, 852 F.3d 367, 370.[17]  Appellant and Amici's

reliance on *LVNV* is too simplistic. *LVNV* involved neither the issue of

vesting of estate property nor the use or validity of a local chapter 13

plan form. Simplifying the issue of confirmation to determining

whether a debtor has complied with 11 U.S.C. §§ 1322 and 1325 would

ignore the other controlling portions of the Bankruptcy Code as well as

---

[17]The only mention of a local form in *LVNV* was the court's statement that the debtors had used "'form' Chapter 13 plans, which are utilized by the bankruptcy courts in the District of South Carolina." *LVNV Funding, LLC v. Harling*, 852 F.3d 367, 369 (4th Cir. 2017).

the Bankruptcy Rules' authority to require debtors to comply with official and local forms.  Plans must comply with the other provisions of 11 U.S.C. §§ 1301 *et seq.* and with the other applicable provisions of 11 U.S.C. §§ 101 *et seq.  See* 11 U.S.C. § 1325(a)(1).  Plans also must comply with Official Form 113 or the local form adopted by the district court.  *See* Fed. R. Bankr. P. 3015(c); 3015.1.  Other provisions of the Code and the Federal Rules of Bankruptcy Procedure "need not be mentioned separately in § 1325(a)" for the debtor to be required to comply with them.  *Cf. In re Cherry*, 963 F.3d 717, 719 (7th Cir. 2020).

## CONCLUSION

The Trustee-Appellee, Steven G. Tate, requests that this Court affirm the district court's order and hold that the bankruptcy court properly sustained the Trustee-Appellee's objection to confirmation of the Debtor-Appellant's initial Chapter 13 plan.

## REQUEST FOR ORAL ARGUMENT

Counsel for Trustee-Appellee Steven G. Tate respectfully requests oral argument.

Respectfully submitted,

/s/ Bonnie Keith Green
Bonnie Keith Green
THE GREEN FIRM, PLLC
P.O. Box 11011
Charlotte, NC 28220
(704) 327-9010
bonnie@bonniegreenlaw.com
*Counsel for Steven G. Tate, Trustee-Appellee*

## **CERTIFICATE OF COMPLIANCE**

1.     I certify that the foregoing Response Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because this brief contains 10,655 words excluding the items exempted by Fed. R. App. P. 32(f).

2.     I certify that the foregoing Response Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

<u>/s/ Bonnie Keith Green</u>
Bonnie Keith Green
THE GREEN FIRM, PLLC
P.O. Box 11011
Charlotte, NC 28220
*Counsel for Steven G. Tate, Trustee-Appellee*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing **TRUSTEE-APPELLE'S RESPONSE BRIEF** with the United States Court of Appeals for the Fourth Circuit using the CM/ECF system on April 6, 2023, that all participants in the case are registered CM/ECF users, and that service will be accomplished by CM/ECF as follows:

R. Todd Mosley
Mosley Law Firm, P.C.
*Counsel for Debtor-Appellant*

Richard P. Cook
Richard P. Cook, PLLC
*Counsel for Amici Curiae*
*National Association of Consumer Bankruptcy Attorneys and*
*National Consumer Bankruptcy Rights Center*

<u>/s/ Bonnie Keith Green</u>
Bonnie Keith Green

*Counsel for Steven G. Tate, Trustee-Appellee*

56